# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * * * *
KEVIN SPARROW and DANIELLE          *
SPARROW, parents and natural guardians,  *    No. 18-295V
on behalf of L.S.,                   *    Special Master Christian J.
                                     *    Moran
              Petitioners,           *
                                     *
v.                                   *
                                     *    Filed: September 9, 2025
SECRETARY OF HEALTH                  *
AND HUMAN SERVICES,                  *
                                     *
              Respondent.            *
* * * * * * * * * * * * * * * * * * * * * * *
```

Scott B. Taylor, Urban & Taylor, S.C., Milwaukee, WI, for petitioner;
Rachel P. Bishop, United States Dep't of Justice, Washington, D.C., for
respondent.

## UNPUBLISHED SECOND DECISION AWARDING ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS[1]

Seeking compensation pursuant to the National Childhood Vaccine Injury
Act, 42 U.S.C. § 300aa–10 through 34 (2012), Kevin and Danielle Sparrow
claimed that a mumps-measles-rubella vaccine caused their daughter, L.S., to

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal
Management and Promotion of Electronic Government Services), requires that the
Court post this decision on its website. This posting will make the decision
available to anyone with the internet. Pursuant to Vaccine Rule 18(b), the parties
have 14 days to file a motion proposing redaction of medical information or other
information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by
the special master will appear in the document posted on the website.

suffer acute disseminated encephalomyelitis.  Counsel of record for the Sparrows is Scott Taylor.

The Sparrows are requesting an award of attorneys' fees and costs on an interim basis.  Pet'rs' Mot., filed Mar. 10, 2025.  The Secretary has not opposed this request.  Resp't's Resp., filed Mar. 24, 2025.  For the reasons that follow, **the Sparrows are awarded $144,755.70**.

## I.    <u>Abbreviated Procedural History</u>

The Sparrows initiated this litigation by filing a petition on February 27, 2018.   Mr. Taylor has represented them throughout this case.  The Sparrows received $82,257.40 as an interim award of attorneys' fees and costs on October 25, 2021.  2021 WL 5410424.

After that first interim fee award, litigation has continued.  The most prominent event was that a hearing was held on July 14-15, 2022 in Milwaukee, Wisconsin.  During this hearing, the doctor whom the Sparrows had retained, Lawrence Steinman, testified in-person.  After the hearing, the Sparrows filed a primary brief (June 13, 2023) and a reply brief (September 28, 2023).

The Sparrows were found not entitled to compensation.  Entitlement Decision, issued Mar. 19, 2024, 2024 WL 2024 WL 1599165.  The entitlement decision is approximately 46 single-spaced pages, excluding an appendix.

The Sparrows challenged the outcome of their case by filing a motion for review.  As discussed below, the primary drafter of the motion for review was a different attorney, Curtis Webb.  The motion for review is approximately 21 pages as the Sparrows were authorized to exceed the page limit.  Order, issued May 7, 2024.

The Court conducted an in-person oral argument.  During the oral argument, the Court requested an additional submission from the Sparrows, which the Sparrows made on July 15, 2024.  The Court denied the motion for review, 173 Fed. Cl. 177 (2024), and judgment entered against the Sparrows.

The Sparrows appealed the denial of compensation to the Federal Circuit.  While their appeal remains unresolved, the Sparrows filed their pending motion for a second interim award of attorneys' fees and costs.  The Secretary essentially

deferred to the discretion of the special master.  Resp't's Resp., filed Mar. 24, 2025.

This matter is now ripe for adjudication.

## II.  Analysis

The Sparrows' motion implicitly raises a series of sequential questions, each of which requires an affirmative answer to the previous question.  First, are the Sparrows eligible under the Vaccine Act to receive an award of attorneys' fees and costs?  Second, as a matter of discretion, should the Sparrows be awarded their attorneys' fees and costs on an interim basis?  Third, what is a reasonable amount of attorneys' fees and costs?  These questions are addressed below.

### A.  Eligibility for an Award of Attorneys' Fees and Costs

As an initial matter, interim fee awards are available in Vaccine Act cases.  Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008).  Since the Sparrows have not received compensation from the Program, they may be awarded "compensation to cover [their] reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim."  42 U.S.C. § 300aa–15(e)(1).  As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs.  Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 635 (Fed. Cir. 2017).

The Secretary has not challenged the Sparrows' good faith here, and there is little doubt that the Sparrows brought the claim with an honest belief that a vaccine injury occurred.  Similarly, the Secretary has not challenged the reasonable basis for this claim.  Dr. Steinman's reports satisfy the reasonable basis standard.

### B.  Appropriateness of an Interim Award

Interim awards should not be awarded as a matter of right.  Avera, 515 F.3d at 1352 (Fed. Cir. 2008).  Instead, petitioners must demonstrate "undue hardship."  Id.  The Federal Circuit noted that interim fees "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained."  Id.  The Federal Circuit has also considered whether petitioners faced "only a short delay in the award" before a motion for final fees could be entertained.  Id.

3

The Federal Circuit has not attempted to specifically define what constitutes "undue hardship" or a "protracted proceeding." In this case, however, an interim award is appropriate. After the first decision awarding attorneys' fees and costs on an interim basis, more than three years has past. In addition, the Sparrows' counsel has expended funds for Dr. Steinman's work. These circumstances support an award of attorneys' fees and costs on an interim basis.

### C.  Reasonableness of the Requested Amount

Under the Vaccine Act, a special master may award reasonable attorneys' fees and costs. 42 U.S.C. § 300aa–15(e)(1). In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018). Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on litigation, the lodestar approach. Avera, 515 F.3d at 1347–48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)); Saxton ex rel. v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

### 1.  Reasonable Hourly Rate

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. See Blum, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Id. at 895 n.11. A petitioner's counsel in the Vaccine Program is paid the forum rate unless the bulk of the work is performed in a locale other than the forum (District of Columbia) and the local rate is significantly lower than the forum rate. Avera, 515 F.3d at 1349. If these two requirements are met, the Davis County exception applies, and petitioner's counsel is paid according to the local rate to avoid a "windfall." Id.; see Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 757–60 (D.C. Cir. 1999).

For cases in which forum rates apply, McCulloch provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), mot. for recons. denied, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the McCulloch rates, and the Attorneys' Forum Hourly Rate Fee Schedules can be accessed online.

The Sparrows propose rates for Mr. Taylor that vary with the given year. The Secretary does not dispute Mr. Taylor's entitlement to these rates. Given Mr. Taylor's level of experience, the undersigned finds these rates to be reasonable. E.M. v. Sec'y of Health & Human Servs., No. 14-753V, 2025 WL 2093292 (Fed. Cl. Spec. Mstr. June 30, 2025).

In addition, the Sparrows propose a rate for Mr. Webb that is $553.00 per hour. This rate has also been awarded and reasonable. Phelan v. Sec'y of Health & Hum. Servs., No. 18-1366V, 2025 WL 1453777 (Fed. Cl. Spec. Mstr. Apr. 30, 2025).

2.    Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton, 3 F.3d at 1521. The Secretary did not challenge any of the requested hours as unreasonable. For ease of analysis, the application is divided into two periods: before the Entitlement Decision and after the Entitlement Decision.

a)    *Before the Entitlement Decision / Office of Special Masters*

Most of Mr. Taylor's entries are reasonable and accepted. But there is one type of exception.

Mr. Taylor created entries that span multiple days. For example, on July 8-10, 2022, Mr. Taylor spent slightly more than 10 hours, primarily preparing Dr. Steinman's direct examination. Similarly, on July 11-13, 2022, Mr. Taylor spent 16.7 hours preparing for the hearing. More significantly, from April 15, 2023 to June 10, 2023 (approximately two months), Mr. Taylor spent 59.1 hours drafting the post-hearing brief.

Attorneys are expected to create time entries contemporaneous. Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316 (2008) (citing cases in footnote 4); see also Banks v. United States, 171 Fed. Cl. 142, 162-63 (2024) (identifying multiple examples of "time entries that would never survive the scrutiny of paying client" including entries that "combine work over several days, weeks, or months with no itemization of when or for how long any specific work was done"). Thus, to start with the first example, on July 8, 2022, Mr. Taylor

5

should have logged how much time he spent preparing Dr. Steinman's direct examination. Then, on July 9, 2022, Mr. Taylor should have recorded his time. And, again, on July 10, 2022, the same process. In this way, Mr. Taylor would have avoided stretching an entry across three days.

Combining multiple days into one entry suggests that Mr. Taylor did not record his work when he did the work. And this lack of contemporaneousness suggests that the information may be inaccurate.

Mr. Taylor's creation of these entries is surprising because the October 25, 2021 First Fee Decision deducted 20% percent of time for this type of entries. Thus, Mr. Taylor should have reformed his billing practices. Accordingly, the time associated with these entries are reduced by 30%. This change results in a deduction of $11,863.08.

<em>b)  After the Entitlement Decision / Court of Federal Claims</em>

After the entitlement decision issued on March 19, 2024, Mr. Taylor reviewed the decision. He spent 6.5 hours preparing a rough draft of a motion to review, which he presented to a "Petitioner's Appellate Council." Thereafter, the Sparrows must have decided to continue to litigate the case as they eventually filed a motion for review. From the time Mr. Taylor starting consulting other attorneys to the filing of the motion for review, Mr. Taylor spent 23.4 hours on various tasks. The requested amount is $12,589.20.

However, as mentioned earlier, Mr. Taylor was not the primary draftsperson for the motion for review. The primary person was Mr. Webb. Mr. Webb's group, in turn, spent 122.6 hours on drafting the motion for review. Mr. Webb's team includes Alexander Webb, who is a paralegal, plus Mr. Curtis Webb.[2] The requested amount for this group is $60,422.10.

This amount of time is not reasonable. To start, the involvement of Mr. Alexander Webb seems questionable. Mr. Webb spent approximately 20 hours and has charged $3,688.35. For example, on April 11, 2024, Mr. Webb has charged 2.5 hours for "Reviewed newest draft of appeal by CRW [Curtis Webb];

---

[2] Alexander Webb is identified as a 2016 graduate of Utah State University, who earned a degree in political science. He has worked as a paralegal since 2015. Fee Appl'n, Exhibit G at 3.

prepared memo to CRW with revisions and content suggestions."  But, as a paralegal, Mr. Webb seems to lack the legal training to revise an attorney's legal arguments.  Moreover, on the same date, Mr. Taylor spent 0.5 hours reviewing Attorney Webb's sixth draft of the motion for review and 0.6 hours in a lengthy telephone conference with Attorney Webb to discuss briefing strategy.  Thus, paralegal Webb's work is also, at times, duplicative.  The charges associated with paralegal's work are eliminated entirely.

In assessing the reasonable amount of time for both Attorney Taylor and Attorney Webb, the undersigned has considered the time entries as well as the motion for review, which was filed on April 18, 2024.  The motion for review is 21 pages.  It cites six well-known and leading cases from the Federal Circuit as well as two decisions from special masters.  Some portions of the motion for review, naturally, track portions of the Sparrows' post-hearing brief, filed on June 13, 2021.  For example, the facts and the procedural history are similar, although they are not identical.

Within the sections that are new, it is difficult to see how experienced attorneys spent as much time as they have charged.  For example, Attorney Webb charged 4.5 hours for drafting an argument about <u>Knudsen</u>.  Entry for April 5, 2024.[3]  Yet, the section with an argument based upon <u>Knudsen</u> consists of about one page and within that range, a portion is a block quote from the Federal Circuit's opinion.  <u>See</u> Pet'rs' Mot. for Rev. at 13-14.

Unfortunately, due to the lack of specificity in most time entries, understanding how other time contributed to the finished motion for review is more difficult.  One example of a vague or nonspecific entry is Attorney Webb's August 10, 2024 entry: "Drafted and revised Memo of Objections Prepared Numbered Objections; Re-organized and revised ADEM v. viral encephalitis argument."  For these items, Attorney Webb has charged 7.5 hours (or nearly a full day's worth of work).

Under these circumstances, the undersigned will rely upon the experience of special masters in assessing the reasonable number of hours for motions for review.  <u>See</u> <u>Saxton v. Sec'y of Health & Human Servs.</u>, 3 F.3d 1517, 1521 (Fed.

---

[3] Attorney Webb also created entries involving the Knudsen argument on April 8, 2024 (2.5 hours) and April 15, 2024 (0.6 hours), but these entries are combined with time spent on other arguments.

Cir. 1993) (authorizing special masters to adjudicate fee applications based upon their experience). Some motions for review can be drafted in about 40 hours. See Tullio v. Sec'y of Health & Hum. Servs., No. 15-0051V, 2021 WL 5854057, at *2 (Fed. Cl. Spec. Mstr. Nov. 10, 2021) (halving time spent on a motion for review from over 80 hours and citing cases).[4] In the undersigned's experience, the motion for review could have been drafted in approximately 40 hours. As pointed out, the motion for review does not involve an inordinate number of cases or extensive discussion of the nuances of legal precedent. Instead, the motion for review appears to raise, mainly, challenges to weighing of facts.[5] In this situation, allocating the amount of time in a standard workweek (40 hours) to draft a 21-page motion is reasonable. However, because Attorney Webb did not try the case and, therefore, needed to learn more about the case compared to Mr. Taylor, an extra 10 hours will be allotted to Attorney Webb. Thus, in these circumstances, a reasonable amount of compensation for attorneys to draft a 21-page motion for review is 50 hours.

Because Attorney Webb was the primary drafter of the motion for review, allocating him a larger share of the reasonable amount of time is appropriate. Thus, Attorney Webb will be compensated for 40 hours of work at his proposed billing rate. Mr. Taylor will be compensated for the remaining time (10 hours) for contributing to the drafting of the motion for review.[6]

After the Sparrows filed the motion for review, Attorney Webb's work ended. However, Mr. Taylor continued to perform tasks associated with the motion for review. For example, Mr. Taylor prepared for, traveled to, and

---

[4] The statement that some motions for review can be drafted in approximately 40 hours does not mean that all motions for review should take that long. Detailed time records could demonstrate that more than 40 hours are reasonably required. On the other hand, some motions for review, perhaps those involving amounts of attorneys' fees, might take fewer than 40 hours.

[5] The undersigned recognizes that the Sparrows characterized some of their arguments as "contrary to law." However, the Court appears to have treated them as raising factual issues as the Court ruled that the undersigned's determination was not arbitrary and capricious. Sparrow, 173 Fed. Cl. at 180.

[6] The Sparrows' primary brief at the Federal Circuit largely tracks the motion for review. Thus, the undersigned would be surprised if the Sparrows sought compensation for a large number of hours for their March 21, 2025 brief.

participated in an oral argument.  This time is accepted as reasonable, although Mr. Taylor is again advised to avoid billing over the course of days.

Accordingly, a reasonable amount for the entire motion for review is as follows:[7]

| Drafting Motion for Review | | | |
|---|---|---|---|
| | Hourly Rate | Reasonable Number of Hours | Subtotal |
| Attorney Webb | $553.00 | 40 | $22,120.00 |
| Attorney Taylor | $538.00 | 10 | $5,380.00 |
| Total: | | | $27,500.00 |
| | | | |
| Time after the Motion for Review | | | |
| | | | |
| Attorney Taylor | $538.00 | 33.3 | $17,915.40 |
| Travel | $269.00 | 8.2 | $2,205.80 |
| Total | | | $20,121.20 |
| | | | |
| Complete Award for Motion for Review | | | $47,621.20 |

---

[7] Technically, Mr. Taylor has charged a small amount of time for tasks not associated with the motion for review, such as filing the notice of appeal and preparing the pending motion for interim fees.  Because these amounts are small, they are lumped with the time for the motion for review for simplicity.

### 3. Summary regarding Attorneys' Fees

| Office of Special Masters | |
|---|---|
| Proposed | $70,573.60 |
| Reduction | $11,863.08 |
| Subtotal | $58,710.52 |
| | |
| Court of Federal Claims | |
| Awarded for Attorney Taylor | $25,501.20 |
| Awarded for Attorney Webb | $22,120.00 |
| | |
| Total Award of Attorneys' Fees | $106,331.72 |

Accordingly, the Sparrows are awarded attorneys' fees in the amount of $106,331.72. This amount is reasonable for work performed through March 7, 2025.

### 4. Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). For attorneys' costs through March 8, 2025, the Sparrows requested $4,743.38, mostly consisting of transcript costs and costs associated with Mr. Taylor's travel for oral argument. See Pet'rs' Mot., Fees Exhibit C and D. These costs are reasonable. The Sparrows stated that they did not incur any costs personally.

For the expert-related costs through August 2022, the Sparrows have requested compensation for Dr. Steinman, totaling $34,637.00. Pet'rs' Mot., Fees Exhibit E. Dr. Steinman's charges are of two types: his time and his expenses.

Compensation for an expert's time is also determined using the lodestar method in which a reasonable hourly rate is multiplied by a reasonable number of hours. See Chevalier v. Sec'y of Health & Human Servs., No. 15-001V, 2017 WL 490426, at *3 (Fed. Cl. Spec. Mstr. Jan. 11, 2017). A reasonable hourly rate for an

expert depends, in part, on the quality of the expert's work.  Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 218–25 (2009).

Dr. Steinman's invoices reflect that he has spent 59 hours preparing for and participating in the two-day hearing.  Fee Exhibit E.  The number of hours is reasonable.

Dr. Steinman has invoiced at $550 per hour.  Dr. Steinman was compensated at this rate for his more recent work in the October 25, 2021 First Interim Fee Decision.  Thus, this rate is, again, reasonable.

While the process of determining a reasonable amount of compensation for Dr. Steinman's work is straightforward, the determination of the reasonableness of Dr. Steinman's expenses is more complicated.  To start, some aspects of Dr. Steinman's request show restraint.  Dr. Steinman routinely refrains from billing for his meals as Dr. Steinman has explained that he would eat regardless of whether he was at a hearing.  Dr. Steinman also hired a car service to drive him to/from Milwaukee, where the hearing was held, from/to Chicago, where flights were more available.  Dr. Steinman's use of a car service could be reasonable, and therefore reimbursable.  But Dr. Steinman has not sought reimbursement.

However, the reasonableness of charges for which Dr. Steinman has sought reimbursement is debatable.  Dr. Steinman has sought reimbursement for his hotel costs and his flight.

When flying from Los Angeles to Chicago, Dr. Steinman sat in business class and incurred a cost of $1,43.20.  Fee Exhibit F at 7-8.  The Vaccine Program does not compensate for upgraded methods of travel.  See Davis v. Sec'y of Health & Human Servs., No. 16-774V, 2019 WL 2281748, at *2 (Fed. Cl. Spec. Mstr. Apr. 2, 2019); Reichert v. Sec'y of Health & Human Servs., No. 16-697V, 2018 WL 3989429, at *4 (Fed. Cl. Spec. Mstr. Jun. 20, 2018); Tetlock v. Sec'y of Health & Hum. Servs., No. 10-56V, 2017 WL 5664257, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2017).  However, Dr. Steinman reduced the proposed reimbursement to $716.  Id. at 2.  The ensuing question is "is $716 a reasonable amount to fly from Los Angeles to Chicago?"  The answer to that question is "no."

Neither the Sparrows, nor Mr. Taylor, nor Dr. Steinman have produced evidence that shows the cost of a flight from Los Angeles to Chicago in coach class would have been in July 2022.  This lack of evidence is problematic because petitioners bear the burden of proving the reasonableness of their requested costs.

The proposed charge ($716) appears excessively high because multiple airlines probably fly between two of the busiest airports (LAX or ORD) and the competition is likely to moderate prices.  In this situation, one alternative is to deny reimbursement entirely because it is not supported.  However, Dr. Steinman did make a good-faith effort to attempt to reduce the charge to a reasonable amount.  And so, as a matter of discretion, the amount is halved again, resulting in reimbursement of $358.00.  This amount would more closely approximate the cost of a coach ticket from Los Angeles to Chicago.

The final item is Dr. Steinman's request for reimbursement for a two-night stay at the Pfister Hotel in Milwaukee.  The request is for $1,745.36, which includes in-room dining charges of $90.09, $110.99, and $33.36.  Dr. Steinman's proposed charge exceeds by a multiple of more than three the cost the undersigned incurred at the same time (but at a different hotel).  Accordingly, a reasonable amount of compensation is one-half (not one-third) of Dr. Steinman's proposed charge.

| Reimbursement for Dr. Steinman | | |
|---|---|---|
| Time for Preparing for and Attending Hearing | | |
| Number of Hours | Hourly Rate | Subtotal |
| 59 | $550 | $32,450.00 |
| | | |
| Costs Associated with Hearing | | |
| Awarded for Flight | | $358.00 |
| Awarded for Hotel | | $872.68 |
| | | |
| Total | | $33,680.68 |

Accordingly, the Sparrows are awarded costs in the amount of $38,423.98.

## III.    **Conclusion**

Accordingly, the Sparrows are awarded:

A lump sum of **$144,755.70** to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.

This amount represents reimbursement of interim attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e).  In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[8]

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master

---

[8] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review.  Vaccine Rule 11(a).